TAYLOR, J.
Dr. Tim Ioannides appeals a final judgment entered in favor of Dr. Ricardo Ro-magosa after a jury found him liable for both breach of contract and fraudulent inducement. He argues that the trial court erred in denying his motion for summary judgment on the fraudulent inducement claim because any alleged fraudulent oral representations that he made to Dr. Ro-magosa regarding his earnings were adequately addressed in a written employment agreement subsequently executed by the parties. We agree that the contract *432 between the parties precluded relief on the fraud claim and reverse.
Dr. Ioannides and Dr. Romagosa met during Dr. Romagosa’s first year of medical school. At that time, Dr. Ioannides was further along in his studies. He opened a dermatology practice after finishing his residency. His practice was very successful, and he began opening satellite offices throughout the Treasure Coast. Dr. Ioannides recruited Dr. Romagosa, who was nearing the end of his residency, to open one of his satellite offices in Stuart and work with him for three years under a contract. It was anticipated that after three years Dr. Romagosa would become a partner. According to the allegations in the fraud in the inducement claim brought by Dr. Romagosa, Dr. Ioannides told him that “if he worked for Defendants his total annual compensation from salary and bonuses would easily exceed $500,000 per year for the years prior to making partner.”
Thereafter, Dr. Ioannides and Dr. Ro-magosa entered into a contract which contained specific provisions regarding how Dr. Romagosa’s salary and bonuses would be calculated:
F. Employee Compensation. For all services rendered by Employee under this agreement, Employee shall be entitled to a base salary plus production bonus:

Base salary:

Working three days per week (August 20th, 2003 to December 31st, 2003), base salary of $150,000 annually;
Working 4 days per week (January 1st, 2004 to August 31st, 2004), base salary of $200,000 annually;
Working 5 days per week (September 1st, 2004-August 31st, 2006), base salary of $250,000 annually.
Romagosa is required to work 4 full days per week on January 1st, 2004 and required to start 5 full days per week on September 1st, 2004.

Production bonus:

During the first 12 months of employment (August 20th, 2003 to August 20th, 2004); after office expenses (including Romagosa base salary and billing fees as discussed below) of setting up and running the new office (Stuart office plus Collagen, Botox, and Peels of the any office location as applicable to Romago-sa’s practice; plus advertising fees for the Vero Beach office and Stuart) plus 5% of aforementioned expenses, the next 50,000 in collections will be added to Romagosa base salary. The next $1,000,000 in profits after expenses will be split with 60% of those collections going to Romagosa and 40% to Ioan-nides. All profits above $1,000,000 will be split 80% to Romagosa and 20% to Ioannides. Romagosa would be responsible for his portion billing fees. The billing fees will be calculated based on the percentage of total revenue that Ro-magosa collects. Romagosa is to enter into a partnership track after the first year of employment (starting September 1st, 2004), during this time, in order to maintain a partnership track, he must work a 5 day, 40 hour workweek. He would be eligible for partnership benefits after a consecutive of two years of the aforementioned full-time work. The specific details and terms of such partnership are to be discussed at the time Romagosa starts full-time employment which is required of employee to be September 1st, 2004.
After the first 12 months of employment, the bonus with will be calculated as follows: After office expenses (as defined above) all profits will be split 80% to Romagosa and 20% to Ioannides.
*433 The contract also contained an integration clause:
L. Integration. This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof. All prior agreements, and covenants, express or implied, oral or written, with respect to the subject matter hereof, are hereby superseded by this agreement. This is an integrated agreement. Should the language of this contract conflict with any Employer manual or memorandum, the language of this contract shall control unless the external document specifically states that it shall act as a modification of company employment contracts and the Employee consents to this modification.
Dr. Romagosa began working for Dr. Ioannides, but the relationship soon soured. Dr. Romagosa left the dermatology practice after twenty-three months. He then filed suit against Dr. Ioannides, claiming that Dr. Ioannides breached the employment contract and had fraudulently induced him into entering into it by orally representing that he would earn more than $500,000 per year.
Dr. Ioannides filed a motion for summary judgment as to the fraud claim. He argued that the claim for fraudulent inducement failed as a matter of law because a party may not recover for fraudulent inducement when the allegedly false statements were adequately addressed by a subsequent written agreement entered into between the parties. The trial court denied the motion and the case proceeded to trial. The jury awarded Dr. Romagosa $481,000 for bonuses he was due under the contract and $760,000 in damages for the fraudulent inducement claim. This appeal concerns only the fraud damages award.
An order denying a motion for summary judgment is reviewed de novo. Tarin v. Sniezek, 942 So.2d 458, 460 (Fla. 4th DCA 2006) (citing Fla. Bar v. Rapoport, 845 So.2d 874, 877 (Fla.2003)). Additionally, the interpretation of a written document, in this case a contract, also presents a question of law and is reviewed de novo. Port-A-Weld, Inc. v. Padula & Wadsworth Constr., Inc., 984 So.2d 564, 568 (Fla. 4th DCA 2008) (citing Sumner Grp., Inc. v. M.C. Distributec, Inc., 949 So.2d 1205,1206 (Fla. 4th DCA 2007)).
Dr. Romagosa argues that our recent decision in Sunrise Lakes Condominium Apts. Phase III, Inc. 5 v. Frank, 73 So.3d 901 (Fla. 4th DCA 2011), bars Dr. Ioannides from challenging the trial court’s denial of his motion for summary judgment on appeal because judgment was entered against him after a full trial on the merits. In Sunrise Lakes, we stated “that any error in failing to enter summary judgment on behalf of [the appellant] is moot in light of the trial court’s judgment against [the appellant] at trial.” Id. However, we have previously addressed the denial of a motion for summary judgment when the issues raised by the parties presented a pure question of law. E.g., Tunnage v. Green, 947 So.2d 686, 688-89 (Fla. 4th DCA 2007) (reversing trial court’s denial of motion for summary judgment because trial court misapplied the law). The Florida Supreme Court and other district courts have also addressed the denial of a party’s pre-trial motion for summary judgment after a full trial on the merits. See, e.g., Shuster v. N.Y. Life Ins. Co., 351 So.2d 62, 64-65 (1977) (reversing trial court’s denial of pre-trial motion for summary judgment because plaintiff established she was entitled to relief as a matter of law), overruled on other grounds, 373 So.2d 916 (Fla.1979); Ray-Mar Beauty Coll., Inc. v. Ellis Rubin Law Offices, P.A., 475 So.2d 718, 718 (Fla. 3d DCA 1985) (same); Give Kids the World, Inc. v. *434 Sanislo, — So.3d —, 2012 WL 1645607 (Fla. 5th 2012) (same).
Sunrise Lakes found support for its holding in a decision of the Georgia Court of Appeals, Certain Underwriters at Lloyd’s of London v. Rucker Construction, Inc., 285 Ga.App. 844, 648 S.E.2d 170 (Ga.Ct.App.2007). In Rucker, the court stated:
After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case. Stated differently, where a motion for summary judgment is overruled on an issue and the case proceeds to trial and the evidence at trial authorizes the verdict (judgment) on that issue, any error in overruling the motion for summary judgment is harmless.
Id. at 172 (emphasis in original) (quotations omitted). When the evidence at trial does not authorize the verdict, then the denial of a motion for summary judgment is not moot. Schirmer v. Amoroso, 209 Ga.App. 682, 434 S.E.2d 80, 82 (Ga.Ct.App.1993).
The Supreme Court has recently addressed this issue and noted that there is a distinction between a motion for summary judgment that is denied for evidentiary reasons and a motion for summary judgment that is denied based upon the trial court’s interpretation of the law. See Ortiz v. Jordan, — U.S.—, 131 S.Ct. 884, 892, 178 L.Ed.2d 703 (2011). In Ortiz, the Court held that a party may not challenge the denial of its motion for summary judgment after a full trial on the merits. Id. at 888-89. However, the Court limited its holding by clarifying that it was not addressing cases dealing with purely legal issues such as cases dealing with “disputes about the substance and clarity of preexisting law.” Id. at 892.[1] This distinction has been recognized by several federal circuit courts. See, e.g., Banuelos v. Constr. Laborers’ Trust Funds for S. Cal., 382 F.3d 897, 902 (9th Cir.2004) (“This general rule, however, does not apply to those denials of summary judgment motions where the district court made an error of law that, if not made, would have required the district court to grant the motion.” (citing Pavon v. Swift Transp. Co., Inc., 192 F.3d 902, 906 (9th Cir. 1999))); see also Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1521 (10th Cir.1997) (“[Wjhen the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment.” (citing Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1229 (10th Cir.1995); Ruyle v. Cont’l Oil Co., 44 F.3d 837, 841-42 (10th Cir.1994))); Fencorp, Co. v. Ohio Ky. Oil Corp., 675 F.3d 933, 940 (6th Cir.2012) (“But because Ortiz leaves open the possibility that cases ‘involving] ... [only] disputes about the substance and clarity of pre-existing law’ may still be considered, we briefly consider two legal arguments for summary judgment on the state law claims.” (alterations in original) (internal citation omitted) (quoting Ortiz, 131 S.Ct. at 892) (citing Owatonna Clinic-Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind., 639 F.3d 806, 809-10 (8th Cir.2011))).
We conclude that when, as here, the material facts are not in dispute and the denial of summary judgment is based *435 on the resolution of a purely legal question, such a decision is appealable after final judgment. Thus, Sunrise Lakes does not apply to this case. Here, no evidence was presented at trial that “authorize[d] the verdict” and rendered denial of the motion for summary judgment moot. Dr. Ioannides was entitled to judgment on the fraudulent inducement claim as a matter of law.
We also reject Dr. Romagosa’s argument that Dr. Ioannides failed to move for summary judgment on the fraudulent misrepresentation claim regarding annual earnings and thus failed to properly preserve this argument for appeal. The record reflects that Dr. Ioannides’s motion for summary judgment on the fraudulent inducement claim, as well as his argument at the hearing on the motion, included the alleged misrepresentation about earning more than $500,000 per year. He argued then, as he does now on appeal, that Section F. of the Employment Agreement adequately addressed what Dr. Romagosa’s salary would be, and as such, negated his ability to rely upon the representations made by Dr. Ioannides concerning his annual earnings.
In his motion for summary judgment, Dr. Ioannides cited cases in support of this proposition that he relies upon in this appeal: Hillcrest Pacific Corp. v. Yamamura, 727 So.2d 1053 (Fla. 4th DCA 1999), and Mac-Gray Services, Inc. v. DeGeorge, 913 So.2d 630 (Fla. 4th DCA 2005).
In Hillcrest, we stated that “[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract.” 727 So.2d at 1056 (citations omitted). There, we held that an allegation of fraud in the inducement pertaining to the purchase of a golf course was insufficient as a matter of law, where the agreement clearly stated the purchase price of the property was $9.3 million and thus barred any claim for fraudulent inducement based upon the real estate agent’s knowledge that the seller was only seeking to net $6.2 million. Id. at 1058.
Similarly, in Mac-Gray, we held that a sales representative’s statements that a new laundromat could expect near six-figure profits were negated by a subsequent contractual provision disclaiming any guarantee of profits. 913 So.2d at 633.
In this case, given the specific provisions in the contract detailing Dr. Romagosa’s salary and formula for computing bonuses, Dr. Romagosa cannot recover in fraud for alleged oral statements about potential earnings made prior to entering into the contract. Under Hillcrest, Dr. Romago-sa’s annual compensation was “ádequately covered” by the agreement.. Contrary to Dr. Romagosa’s argument, the complexity of the bonus formula did not cause it to be ambiguous so as to render the allegedly fraudulent oral representation of Dr. Ioan-nides actionable. Accordingly, the trial court erred when it denied Dr. Ioannides’s motion for summary judgment.
Having determined that the trial court erroneously denied Dr. Ioannides’s motion for summary judgment on the fraud claim, we remand with directions to vacate the $760,000 award on the fraudulent inducement claim and enter judgment in favor of Dr. Ioannides on this claim. Our holding on this issue moots Dr. Ioannides’s argument that the jury’s award on the fraudulent inducement claim and the breach of contract claim overlapped and constituted a double recovery.

Reversed and Remanded for proceedings consistent with this opinion.

STEVENSON and CIKLIN, JJ., concur.

. We acknowledge that the Court addressed an interpretation of the Federal Rules of Civil Procedure and that its holding is not binding upon this court. However, Federal Rule of Civil Procedure 56 served as the foundation for Florida Rule of Civil Procedure 1.510. Authors' Comments, Fla. R. Civ. P. 1.510 (1967). As such, we find Ortiz and other federal cases to be persuasive on this issue.